The judgment of the United States Customs Court is, therefore, *affirmed*.

UNITED STATES *v.* CENTRAL SCIENTIFIC Co. (No. 3683) [1]

United States Court of Customs and Patent Appeals, November 6, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.
*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 10, 1933, by Mr. Lawrence and Mr. J. Stuart Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Central Scientific Co., the appellee, imported at the port of Chicago certain cover glasses for use in connection with slides used to mount

---
[1] T.D. 46749.

specimens for microscopic examination. These cover glasses were of various shapes and sizes, some being oblong, some square, and some in circles. The samples before us are each seven eighths inch square and approximately one one-hundred-and-fiftieth inch in thickness. They were made of cut sheet glass, the glass being known under the trade name of "Bardax." This glass is also called a "pellicular glass" and is made of certain noncorrosive material, free from defects such as scratches, bubbles, pits, and striations which would interfere with microscopic examination, and which glass will not fog or become cloudy under certain climatic conditions.

The exact method of preparation and composition of the glass is not shown by the record, but it does have these stated qualities. As imported, the articles are fully manufactured and are dedicated to the single use of cover glasses for microscope slides.

The collector classified the imported merchandise as scientific articles made wholly or in chief value of glass, under paragraph 218 of the Tariff Act of 1930. The importer protested, claiming it to be dutiable as optical glass under paragraph 227 of said act; as manufactures of glass under division (d) of paragraph 230; as glass articles not specially provided for under division (f) of paragraph 218; as optical instruments, frames and mountings therefor, and parts thereof, under division (b) of paragraph 228; as frames and mountings for optical instruments, and parts thereof, under division (a) of said paragraph 228; and as manufactures of glass under division (c) of paragraph 230 of said tariff act.

The United States Customs Court sustained the protest under said paragraph 227 as optical glass, overruled the protest in all other respects, and rendered judgment accordingly. From that judgment the Government has appealed, insisting that the classification of the collector was correct and that the trial court was in error in its conclusion.

In addition to the statement of facts hereinbefore made, the testimony in the record shows that these cover glasses are exclusively used for the following purpose: When it is desired to microscopically examine a specimen, such as a sample of blood from a typhoid patient, a glass slide, about 3 inches in length and 1 inch in width, made of glass free from structural defects, is procured and cleansed. Upon the center of this cleansed surface is then placed a smear of the specimen to be examined, usually placed thereon by means of a platinum needle. The slide having the smear thereon is then heated and a quantity of stain or dye is then applied to, and upon, the smear. This stains the specimen, so that it can be better examined. A small quantity of Canada balsam is then placed on top of the dyed specimen, and superimposed upon that is one of the imported cover glasses, which has been first cleansed. This is pressed down upon the balsam

and smear, and, by means of the adhesive qualities of the balsam, the cover glass remains in position. The specimen can then be examined under a microscope, and the slide with the specimen thereon can be permanently retained after having been first labeled on the end thereof.

Because of the extreme thinness of these cover glasses the focusing of the microscope, and the examination of the specimen, can be conducted without harm to the lens of the microscope or without it coming in contact with the specimen. The clarity of the material from which the cover glass is composed assists in the visibility of the specimen, and its noncorrosive qualities permit the slide and specimen to be kept indefinitely without deterioration or obscuration of vision.

The Government contends that these cover glasses are biological and scientific articles and utensils within the purview of said paragraph 218 (a). The importer, without waiving its other grounds of protest, insists that the imported articles are optical glass or glass used for optical instruments or equipment. That is the issue in the case.

Paragraphs 218 (a) and 227 are as follows:

PAR. 218. (a) Biological, chemical. metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217 or in subparagraph (e)), finished or unfinished, wholly or in chief value of glass, 85 per centum ad valorem; wholly or in chief value of fused quartz or fused silica, 50 per centum ad valorem.

PAR. 227. Optical glass or glass used in the manufacture of lenses or prisms for spectacles, or for optical instruments or equipment, or for optical parts, scientific or commercial, in any and all forms, 50 per centum ad valorem.

The Congress, in the Tariff Act of 1930, placed in Schedule 2, Earths, Earthenware, and Glassware, a very comprehensive and complete classification of glass and glass products. A part of this schedule, comprising paragraphs 217 and 236, inclusive, which refer in the main to glass or glass products, covers practically every glass product which comes into the ports of our country and is specific in most instances—much more so than any previous classification which has ever been made in any of our tariff acts. Each kind of glass is specified in various paragraphs, as well as glass products, and each is given a rate of duty which it was thought by the Congress was sufficient for such product or manufacture.

An analysis of these paragraphs cannot fail to convince one' that it was the intent, at least, of the Congress to discriminate between manufactured products and raw material. Thus we will observe that paragraph 225 provides for spectacles, eye-glasses, and the like; paragraph 226 provides for lenses of various kinds; paragraph 228

provides for various optical instruments; and paragraph 227 provides for optical glass.

It is evident that paragraph 227 is a material paragraph and was incorporated in the act for the purpose of placing an appropriate rate of duty upon glass which was imported as material out of which optical instruments or equipment might be made.

If this be true, and we have no doubt that it is, in what respect can the imported goods here be said to be optical glass or material for making optical instruments or equipment? They are not material. They are finished articles, completely dedicated to one use. Hence, they are manufactures of glass and not optical glass. This distinction is apparent, not only from said paragraph 227 but from its context in said Schedule 2.

It is contended that the language of said paragraph 227, "in any and all forms", shows the intent of the Congress to include within this paragraph glass "in finished forms ready for use, as well as for glass in unfinished forms," or, otherwise, such language would have no meaning. We are not of this opinion. It was evidently the congressional intent to include in this paragraph all optical glass in any form. This has reference to the form of the material. Thus, the material may be in the form of sheets, plates, tubes, rods, pieces, or any other form desired, so long as it is material only. When it becomes, as here, a manufacture of glass, it ceases to be mere material.

It follows, therefore, that the court below erred in its conclusion that the articles in question should be classified under said paragraph 227.

The collector classified the imported goods under said paragraph 218, being of the opinion that the merchandise was, as he said, "scientific glass articles." It will be observed that paragraph 218 (a) eliminates any distinction which might be made between the articles used in pure science and such as are used in applied science by the language, "whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise."

Are these articles scientific articles which may, under the paragraph, be biological, chemical, metallurgical, pharmaceutical, surgical, and other articles and utensils? That they are articles is admitted. In *United States* v. *Chesterton*, 15 Ct. Cust. Appls. 175, T.D. 42232, this court had under consideration the language of paragraph 218 of the Tariff Act of 1922, in which the language, "scientific * * * tubing and rods," was under investigation. There various glass tubes, used as gauge glasses, were claimed to be scientific tubing. We there said this:

Therefore "scientific tubing", as commonly understood, means a collective assembly of glass tubes, or material for glass tubes, which is of, or pertains to, or is used in, science.

218

We held in that case that the tubes, being used as gage glasses and not for the purpose of making scientific instruments, were not, in fact, scientific tubing. In doing so we quoted Webster's New International Dictionary (1925):

Scientific, *a.* 1. Of, pert. to or used in, science; as scientific apparatus.

The same definition is applicable here. Are these cover glasses used in, or do they pertain to, science? Of course, this may be either in pure science or applied science. They have but one use, and that is in connection with a microscope, which all will admit is a scientific instrument. While the cover glasses, in themselves, perform no scientific operation, they aid in the scientific purpose involved as fully as does a test tube, a retort, and many of the glass articles which are used by the scientists in chemistry, metallurgy, or biology, in arriving at his scientific deductions. They are, therefore, in our opinion, scientific articles and were properly classified by the collector under said paragraph 218 (a).

Our attention is called to the decision of this court in *Thomas* v. *United States*, 12 Ct. Cust. Appls. 425, T.D. 40591. In that case certain microscope slides and cover glasses were assessed under paragraph 228 of the Tariff Act of 1922 as mountings for microscopes and were claimed to be dutiable under paragraph 219 of the same act as cylinder, crown, or sheet glass. We held in that case that the articles were manufactures of glass and, as such claim had not been made in the protest, that the classification of the collector must be upheld without approving its correctness.

We find nothing in that case which interferes with, or is contrary to, the conclusion we have reached in the case at bar.

Whether an article is or is not a scientific article is to be determined by its use and the facts shown by the record. *Hempstead & Son* v. *United States*, 16 Ct. Cust. Appls. 427, T.D. 43173; *United States* v. *Kimball Dental Mfg. Co.*, 19 C.C.P.A. (Customs) 353, T.D. 45501; *United States* v. *Sargent & Co.*, 20 C.C.P.A. (Customs) 172, T.D. 45774; *United States* v. *Aloe Co.*, 20 C.C.P.A. (Customs) 319, T.D. 46111.

We are of the opinion that the classification of the imported goods by the collector was correct, and the judgment of the United States Customs Court is *reversed.*